UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DUWAYNE JACKSON,<br><br>Plaintiff,<br><br>v.<br><br>F. AVILES, et al.,<br><br>Defendants. | Case No.: 18CV60-BAS (BLM)<br><br>**REPORT AND RECOMMENDATION FOR ORDER GRANTING DEFENDANT FINK'S MOTION FOR SUMMARY JUDGMENT [ECF No. 41] AND FOR ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [ECF No. 44]** |

This Report and Recommendation is submitted to United States District Judge Cynthia Bashant pursuant to 28 U.S.C. § 636(b) and Civil Local Rule 72.3(f) of the United States District Court for the Southern District of California. For the following reasons, the Court **RECOMMENDS** that Defendants' motion for summary judgment be **GRANTED** and that Plaintiff's motion for summary judgment be **DENIED**.

## BACKGROUND

On February 26, 2018, Plaintiff filed his First Amended Complaint ("FAC") alleging several claims for relief. FAC. Plaintiff alleges that (1) Defendant Aviles conducted a retaliatory search of his cell on March 28, 2017, (2) Defendant Aviles violated his rights under the Eighth Amendment by harassing and mocking Plaintiff, by calling him a "retard," by pretending to be a

person with mental health challenges, and by implying that Plaintiff likes to "tell the supervisors on [the officers,]" (3) Defendant Aviles violated his rights under the Eighth Amendment by "maliciously and sadistically" snatching and pulling the chains of Plaintiff's waist restraints, (4) Defendant Fink violated his rights under the Eighth Amendment through his failure to adequately train or supervise Defendant Aviles, investigate the incident, discipline Defendant Aviles, or protect Plaintiff, and (5) Defendants Mendoza and Osgood were deliberately indifferent to Plaintiff's safety when they placed Plaintiff - a protective custody inmate - in the same transport van as Inmate Razon - a general population inmate – and Plaintiff was beaten. Id. at 3-11.

On February 27, 2019, Defendants filed a motion for summary judgment arguing that Defendant Fink is not liable under the Eighth Amendment and that Plaintiff failed to exhaust his administrative remedies. ECF No. 41-1 ("D. MSJ"). Plaintiff timely opposed the motion on April 1, 2019. ECF No. 48 ("P. Oppo."). Defendants filed a reply on April 17, 2019. ECF No. 52 ("D. Reply").

On March 5, 2019, Plaintiff filed a motion for summary judgment arguing that the undisputed facts establish that all of the Defendants violated his constitutional rights. ECF No. 44 ("P. MSJ"). Defendants timely opposed the motion on April 4, 2019. ECF No. 49 ("D. Oppo."). Plaintiff did not file a reply. See Docket.

## LEGAL STANDARDS

### A. *Pro Se* Litigants

When a plaintiff appears *pro se*, the court must be careful to construe the pleadings liberally and to afford the plaintiff any benefit of the doubt. See Erickson v. Pardus, 551 U.S. 89, 94 (2007); Thompson v. Davis, 295 F.3d 890, 895 (9th Cir. 2002). This rule of liberal construction is "particularly important" in civil rights cases. Hendon v. Ramsey, 528 F. Supp. 2d 1058, 1063 (S.D. Cal. 2007) (citing Ferdik v. Bonzelet, 963 F.2d 1258, 1261 (9th Cir. 1992)); see also Hebbe v. Pliler, 627 F.3d 338, 342 (9th Cir. 2010) (stating that because "*Iqbal* incorporated the *Twombly* pleading standard and *Twombly* did not alter the courts' treatment of *pro se* filings; accordingly we continue to construe pro se filings liberally . . . ." This is particularly important where the petitioner is a pro se prisoner litigant in a civil matter).

**B. Summary Judgment**

Summary judgment is appropriate if there is no genuine issue as to any material fact, and the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(a). A dispute as to a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The moving party has the initial burden of demonstrating that summary judgment is proper. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The burden then shifts to the opposing party to provide admissible evidence beyond the pleadings to show that summary judgment is not appropriate. Id. at 322-24. The opposing party "may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 256 (citation omitted).

Because Plaintiff bears the burden of proof at trial, to prevail on summary judgment, he must affirmatively demonstrate that no reasonable trier of fact could find other than for him. Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007). Defendants do not bear the burden of proof at trial and in moving for summary judgment, they need only prove an absence of evidence to support Plaintiff's case. In re Oracle Corp. Sec. Litig., 627 F.3d 376, 387 (9th Cir. 2010). If Defendants meet their initial burden, the burden then shifts to Plaintiff "to designate specific facts demonstrating the existence of genuine issues for trial." Id. (citing Celotex Corp., 477 U.S. at 323. This requires Plaintiff to "show more than the mere existence of a scintilla of evidence." Id. (citing Anderson, 477 U.S. at 256).

A court may not weigh evidence or make credibility determinations on a motion for summary judgment; rather, the inferences to be drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. Soremekun, 509 F.3d at 984. If direct evidence produced by the moving party conflicts with direct evidence produced by the nonmoving party, the judge must assume the truth of the evidence set forth by the nonmoving party with respect to that fact. Leslie v. Grupo ICA, 198 F.3d 1152, 1158 (9th Cir. 1999) (citing T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 631 (9th Cir. 1987)). In addition, the "evidence of the non-movant is to be believed, and all justifiable inferences are to

be drawn in his favor." <u>Anderson</u>, 477 U.S. at 256 (citing <u>Adickes v. S.H. Kress & Co.</u>, 398 U.S. 144, 158-159 (1970)).

### C.    Section 1983

42 United States Code Section 1983 imposes two essential proof requirements upon a claimant: (1) that a person acting under color of state law committed the conduct at issue, and (2) that the conduct deprived the claimant of some right, privilege, or immunity protected by the Constitution or laws of the United States. <u>See</u> 42 U.S.C. § 1983; <u>Marsh v. Cty. of San Diego</u>, 680 F.3d 1148, 1152 (9th Cir. 2012). A person acting under the color of law deprives another "of a constitutional right, within the meaning of § 1983, 'if he does an affirmative act, participates in another's affirmative act, or omits to perform an act which he is legally required to do that causes the deprivation of which [the plaintiff complains].'" <u>Preschooler II v. Clark County Sch. Bd. of Trustees</u>, 479 F.3d 1175, 1183 (9th Cir. 2007) (quoting <u>Johnson v. Duffy</u>, 588 F.2d 740, 743 (9th Cir. 1978)). "The inquiry into causation must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation." <u>Leer v. Murphy</u>, 844 F.2d 628, 633 (9th Cir. 1988).

### D.    Evidence the Court May Consider on Summary Judgment

In evaluating a motion for summary judgment, a court may only consider admissible evidence. <u>See</u> <u>Orr v. Bank of America</u>, 285 F.3d 764, 773 (9th Cir. 2002). A party may not create a triable issue of fact merely by presenting argument in its legal memoranda. <u>See</u> <u>S.A. Empresa De Viacao Aerea Rio Grandense (Varig Airlines) v. Walter Kidde & Co.</u>, 690 F.2d 1235, 1238 (9th Cir. 1982); <u>see</u> <u>also</u> <u>Estrella v. Brandt</u>, 682 F.2d 814, 819–20 (9th Cir. 1982) (on summary judgment, statements in legal memoranda are not evidence and "do not create issues of fact capable of defeating an otherwise valid summary judgment motion"). However, if a *pro se* plaintiff submits a verified pleading, the court must consider the factual contents of the verified pleading. <u>See</u> <u>Lopez v. Country Ins. & Fin. Serv.</u>, 252 Fed. App'x 142, 144 n. 2 (9th Cir. 2007) (affirming summary judgment in favor of the defendant where the *pro se* plaintiff "failed to submit any admissible evidence in opposition to the defendants' motion for summary judgment ...," although observing that "[b]ecause [the plaintiff] was representing himself *pro*

*se*, had he signed his pleadings and/or motions under penalty of perjury, the district court would have been required to treat them as evidence for the purpose of summary judgment); see also; Jones v. Blanas, 393 F.3d 918, 923 (9th Cir. 2004) (considering plaintiff's evidence where plaintiff "attested under penalty of perjury that the contents of the motions or pleadings are true and correct"); Harris v. Shelland, 2017 WL 2505287, at *4 (S.D. Cal. June 9, 2017) ("neither an unverified complaint nor unsworn statements made in the parties' briefs can be considered as evidence at this [summary judgment] stage"); and Barragan v. Flynn, 2017 WL 5070037, at *2 (S.D. Cal. Nov. 3, 2017) (same).

In Fraser v. Goodale, 342 F.3d 1032, 1036-1037 (9th Cir. 2003), the court reversed a grant of summary judgment, holding that the district court should have considered unsworn, arguably inadmissible statements written by the plaintiff in a diary. The Ninth Circuit reasoned that "[a]t the summary judgment stage, we do not focus on the admissibility of the evidence's form. We instead focus on the admissibility of its contents." Id. at 1036-1037. The court opined that the contents of plaintiff's diary "were mere recitations of events within [the plaintiff's] personal knowledge and, depending on the circumstances, could be admitted into evidence at trial in a variety of ways," including through plaintiff's testimony. Id. Because the contents could be presented in an admissible form at trial, the court concluded that diary's contents should have been considered as part of the summary judgment motion. Id.; see also Rosenfeld v. Mastin, 2013 WL 5705638, *5 (C.D. Cal. Oct. 15, 2013) (considering plaintiff's unsworn statements made in the third amended complaint and in the opposition because plaintiff "plainly has personal knowledge of the content of these statements and could present the statements in admissible form through his own testimony at trial," but not considering plaintiff's speculative statements regarding a particular claim where there was no indication plaintiff had personal knowledge of the claim); Wilson v. Med. Servs. Div., 2017 WL 1374281, at *7 (S.D. Cal. Apr. 13, 2017) (report and recommendation denied in part on other grounds) (finding that plaintiff failed to show a triable issue of material fact even after considering plaintiff's opposition to the motion for summary judgment that was not signed under penalty of perjury) (citing Rosenfeld,

2013 WL 5705638 at *5).[1]

Plaintiff's opposition was signed under penalty of perjury [see P. Oppo. at 34, Declaration of Plaintiff in Support of Opposition to Defendants' Motion for Summary Judgment] so the Court will consider the relevant factual statements made by Plaintiff in the opposition in evaluating the pending motion.  See Jones, 393 F.3d at 923 ("because Jones is *pro se*, we must consider as evidence in his opposition to summary judgment all of Jones's contentions offered in motions and pleadings, where such contentions are based on personal knowledge and set forth facts that would be admissible in evidence, and where Jones attested under penalty of perjury that the contents of the motions or pleadings are true and correct").  Plaintiff's FAC was not signed under penalty of perjury.  FAC.  Plaintiff's unverified FAC contains factual statements regarding his claims of Eighth Amendment violations and retaliation about which Plaintiff has personal

_____

[1] Several Ninth Circuit cases have interpreted Fraser to permit the consideration of unverified pleadings, unsworn memoranda, and other forms of inadmissible material at the summary judgment stage.  See Jeffries v. Las Vegas Metro. Police Dep't, 713 F. App'x 549, 549–51 (9th Cir. 2017) (affirming district court's grant of summary judgment to defendant on plaintiff's 42 U.S.C. § 1983 claims and finding district court did not err in considering the exhibits attached to defendant's motion for summary judgment even though some of the exhibits were not authenticated "because a competent witness with personal knowledge could authenticate the exhibits at trial") (citing Fraser, 342 F.3d at 1036-37); see also Singleton v. Lopez, 577 F. App'x 733, 736 (9th Cir. 2014) (noting that "[i]t is not controlling at the summary judgment phase that the evidence was hearsay, so long as the evidence could be presented in an admissible form at trial," but finding that the magistrate judge did not abuse his discretion in refusing to admit a 2011 prison report where the statements were not relevant to *pro se* plaintiff's 42 U.S.C. § 1983 claims.) (citing Fraser, 342 F.3d at 1037); Aholelei v. Hawaii, Dep't of Pub. Safety, 220 F. App'x 670, 672 (9th Cir. 2007) (finding that the district court abused its discretion in not considering any of plaintiff's evidence when evaluating whether there had been a constitutional violation by prison officials because the evidence, which consisted primarily of litigation and administrative documents involving another prisoner and letters from other prisoners, "would be admissible at trial if the other inmates were called as witnesses.") (citing Fraser, 342 F.3d at 1036); and Santa Ana Police Officers Ass'n v. City of Santa Ana, 723 F. App'x 399, 402 (9th Cir. 2018) (affirming district court's granting of summary judgment on Plaintiffs-Appellants' 42 U.S.C. § 1983 claim and finding that the court did not improperly rely on Defendants' exhibits because they are not authenticated business records as that would "ignore[] the fact that evidence that is not currently in a form that is admissible at trial is 'admissible for summary judgment purposes [if it] 'could be presented in an admissible form at trial.'" (citing Fonseca v. Sysco Food Servs. of Ariz., Inc., 374 F.3d 840, 846 (9th Cir. 2004) (quoting Fraser, 342 F.3d at 1037)).

18cv60-BAS (BLM)

knowledge. FAC. Because Plaintiff could testify under oath at trial regarding his personal knowledge, the Court will consider those statements. See Fraser, 342 F.3d at 1036-1037. This conclusion is further supported by the fact that Defendants do not object to consideration of Plaintiff's unverified FAC or the evidence submitted in support of the complaint. See Torres v. Rite Aid Corp., 412 F. Supp. 2d 1025, 1028, n.2 (N.D. Cal. 2006) (accepting as competent evidence unsworn declarations not made under penalty of perjury where defendant did not object to the deficiencies) (citing United States ex rel. Austin v. W. Elec. Co., 337 F.2d 568, 574–75 & n. 19 (9th Cir. 1964) (holding that court properly considered technically defective affidavits submitted in connection with summary judgment motion in light of opponent's failure to object); Scharf v. U.S. Attorney Gen., 597 F.2d 1240, 1243 (9th Cir. 1979) ("Generally ... formal defects [such as an affidavit not being based on personal knowledge] are waived absent a motion to strike or other objection....").

## DISCUSSION

Plaintiff and Defendant Fink have both filed motions for summary judgment. D. MSJ and P. MSJ. "Although not simultaneous cross motions for summary judgment, the Court addresses the parties' motions for summary judgment together and considers the evidence submitted in support of and opposition to both motions in ruling on the merits of each." Mendoza v. Doe #1, 2019 WL 506555, at *4 (S.D. Cal., Feb. 7, 2019) (citing Fair Housing Council of Riverside Cnty., Inc. v. Riverside Two, 249 F.3d 1132, 1134 (9th Cir. 2001) ("[W]hen simultaneous cross-motions for summary judgment on the same claim are before the court, the court must consider the appropriate evidentiary material identified and submitted in support of both motions, and in opposition to both motions, before ruling on each of them.")).

## I.    Defendant Fink's Motion for Summary Judgment

Plaintiff alleges that Defendant Fink violated his Eighth Amendment right to be free from cruel and unusual punishment by failing to protect Plaintiff, to intervene to stop Defendant Aviles' conduct, to adequately train or supervise Defendant Aviles, to investigate the incident, and to discipline Defendant Aviles. FAC at 6-7.

Defendant Fink contends that the undisputed facts demonstrate that Defendant Fink

cannot be liable under any theory.  D. MSJ at 12.

## A.    The Parties' Evidence

Interpreting the evidence in the light most favorable to Plaintiff, Plaintiff has established that his cell was searched by Defendant Aviles and Officer Sinkler on March 28, 2017 and that his personal property was thrown away.  P. Oppo. at 32 (Plaintiff's Decl.).  Plaintiff notified Sergeant J. Alvarez about the search and Sergeant Alvarez "assured Plaintiff that the Defendants had made a mistake and that he would replace all of the items and make Plaintiff, whole in his loss at which he did so."  Id.; see also FAC at 3.  Plaintiff states that his cell was searched again on March 29, 2017, that he reported the search to Defendant Fink, and that Defendant Fink gave Plaintiff a cell search receipt signed by Defendant Aviles and Officer Sinkler.[2]  Id. at 32-33; see also ECF No. 47 at 2 (missing page from Plaintiff's Declaration In Support of Motion for Summary Judgment accepted on discrepancy).  Plaintiff told Defendant Fink that he believed the search was performed to harass him and not due to any prison security needs and that Defendant Aviles was "taunting" him.  P. Oppo. at 32-34.  Plaintiff also states that on March 31, 2017, Defendant Aviles "taunted and threatened me and challenged me to a duel if I went to the small management yard."  Id. at 33.  Defendant Aviles then pretended to act as though he was mentally challenged[3] near the small management yard located in front of Defendant Fink's

_____

[2] Plaintiff also declares that he spoke to the "Direct Supervisor of Administrative Segregation housing unit during his visitation of Inmates assigned to disciplinary detention about officer Aviles [and] Sinkler['s] harrasment [sic]," but he does not say if the identified Supervisor was Defendant Fink or another person. P. Oppo. at 33 (Plaintiff's Decl.).  Plaintiff also does not declare that he complained of physical violence or threats of physical violence from Defendant Aviles during that conversation.  Id.

[3] The Court notes that Plaintiff's complaints about Defendant Aviles taunting him and mocking those with mental health issues do not constitute constitutional violations.  See Sutton v. Ruiz, 2014 WL 1671492, at *6 (E.D. Wash., Apr. 28, 2014) (finding that plaintiff's claims that he was "subjected to constant teasing, bullying, harassment, and possible threats' [sic] to his well being, and that he suffer[ed] daily from the constant teasing, and taunts' [sic] of other Prisoners' / Offenders'" did not state a claim for a violation of the Eighth Amendment) (citing Keenan v. Hall, 83 F.3d 1083, 1092 (9th Cir. 1996) ("[V]erbal harassment generally does not violate the Eighth Amendment."); see also Ward v. Rich, 2012 WL 6949263, at *6 (C.D. Cal., Sept. 26, 2012) ("Verbal abuse alone does not rise to the level of a constitutional violation") (citing Oltarzewski

office and in the view of the Administrative Segregation Unit's cameras.  Id.   Finally, Plaintiff states that when he was ready to leave the small management yard around 12:00 p.m., he placed his wrists in the "cuff port" to enable Defendant Aviles to apply the required waist restraint to transfer Plaintiff from the yard to his cell.  FAC at 5; P. Oppo. at 33.  Plaintiff declares that Defendant Aviles "immediately began yanking and pulling [Plaintiff's] hands and arms out of the food port" and opines that he did so "maliciously and sadistically" causing pain and injury. Id.  Plaintiff does not declare that Defendant Fink observed Defendant Aviles' conduct.[4]  P. Oppo. at 31-34; FAC at 3-7.

Defendant Fink declares that (1) he was not present when Plaintiff was restrained by Defendant Aviles, (2) before the March 31, 2017 incident, he was not aware of any physical confrontations between Defendant Aviles and Plaintiff, (3) he did not observe Defendant Aviles use force against or come in contact with Plaintiff on March 31, 2017, (4) before March 31, 2017 Plaintiff never told Defendant Fink that he was concerned about a physical threat from Defendant Aviles, and (5) Defendant Fink had no knowledge of Defendant Aviles using excessive force or being disciplined for excessive use of force.  ECF No.  41-4, Declaration of T. Fink in Support of Motion for Summary Judgment ("Fink Decl.").

_____

v. Ruggiero, 830 F.2d 136, 139 (9th Cir.1987) (verbal harassment or abuse is not sufficient to state a constitutional deprivation under § 1983) (citations omitted); Ivey v. Wilson, 832 F.2d 950, 955 (6th Cir.1987) (alleged verbal abuse, harassment, or arbitrariness by prison officials towards inmate does not qualify as "punishment" within the meaning of the Eighth Amendment's prohibition of cruel and unusual punishment); and Somers v. Thurman, 109 F.3d, 614, 622 (9th Cir. 1997) ("We are mindful of the realities of prison life, and while we do not approve, we are 'fully aware that the exchange of verbal insults between inmates and guards is a constant, daily ritual observed in this nation's prisons.' ") (citation omitted).

[4] Plaintiff states that he told Defendant Fink about this incident and opines that based on Plaintiff's prior harassment complaints, Defendant Fink should have known that Defendant Aviles presented an unreasonable risk of serious harm to Plaintiff.  FAC at 6.  Plaintiff further declares that Defendant Fink was the "direct supervisor of the Administrative Segregation housing unit at which he was able to read the log books and is aware of cell searchs [sic] also other supervisors such as J. Alvarez, made him aware of ongoing discrepancies."  P. Oppo. at 34. Finally, Plaintiff declares that he told Defendant Fink on March 29, 2017 that Defendant Aviles was "taunting" him and harassing him by conducting unnecessary cell searches."  Id.

18cv60-BAS (BLM)

## B.    Deliberate Indifference

### 1.    Legal Standard

Under the Eighth Amendment, prison officials must "take reasonable measures to guarantee the safety of the inmates." Lemons v. A. Camarillo, 2017 WL 3492146, at *5 (S.D. Cal. Aug. 15, 2017) (quoting Hudson v. Palmer, 468 U.S. 517, 526-27 (1984); (citing DeShaney v. Winnebago County Dep't of Social Services, 489 U.S. 189, 199-200 (1989) ("[W]hen the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being.")).  To establish a violation of this duty, an inmate "must show that he is incarcerated under conditions posing a substantial risk of serious harm" and that the prison official acted with "deliberate indifference" to the inmate's health or safety. Farmer v. Brennan, 511 U.S. 825, 833 (1994).  Additionally, because "only the unnecessary and wanton infliction of pain implicates the Eighth Amendment," evidence must exist to show the defendant acted with a "sufficiently culpable state of mind." Lemons, 2017 WL 3492146, at *5 (quoting Wilson v. Seiter, 501 U.S. 294, 297 (1991) (internal quotation marks, emphasis and citations omitted)) and (citing Hudson, 503 U.S. at 5, 8)).

In a failure to protect case, a sufficiently culpable state of mind "is one of 'deliberate indifference' to inmate health or safety." Lemons, 2017 WL 3492146, at *5 (quoting Farmer, 511 U.S. at 834).  Deliberate indifference to an inmate's well-being is shown when prison officials know of and consciously disregard an excessive risk of harm to an inmate's health or safety. Farmer, 511 U.S. at 837.  "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id.  An inmate is not required to show that prison officials believed the serious harm would occur.  Id. at 842.  "[I]t is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." Id.  A prison official's knowledge of the risk "can be proven through circumstantial evidence, such as by showing that the risk was so obvious that the official must have known about it." Stone v. Nielsen, 2018 WL 1512592, at *5–6 (D. Idaho Mar. 27, 2018) (quoting Johnson v. Johnson, 385 F.3d 503, 524 (5th Cir. 2004)).  Mere

negligent failure to protect a prisoner from assault does not comprise a constitutional violation. See Davidson v. Cannon, 474 U.S. 344, 347-48 (1986).

"A prison official can violate a prisoner's Eighth Amendment rights by failing to intervene." Robins v. Meecham, 60 F.3d 1436, 1442 (9th Cir. 1995). "[H]owever, officers can be held liable for failing to intercede only if they had an opportunity to intercede." Campbell v. Murrietta, 2015 WL 5997169, at *3 (C.D. Cal. May 22, 2015) (quoting Cunningham v. Gates, 229 F.3d 1271, 1289 (9th Cir.2000), as amended (Oct. 31, 2000); see also Richards v. Foutch, 2014 WL 4449822 at *7 (C.D. Cal. Sept. 9, 2014). ("A prison official may be held liable for such failure to intervene, however, only if the official was aware that the inmate faced a specific risk of harm from the other prison official's use of excessive force and had a reasonable opportunity to intervene to stop it.")).

2.  Analysis

After considering all of the evidence, the Court finds there is not a triable issue of fact regarding Plaintiff's constitutional claim that Defendant Fink failed to protect him. The undisputed evidence is that prior to March 31, 2017, Defendant Fink did not know that Defendant Aviles presented an excessive risk of harm to Plaintiff. While Plaintiff's evidence could support a finding that Defendant Fink was aware of cell searches by Defendant Aviles that Plaintiff found to be harassing and unnecessary, the evidence does not support a finding that Defendant Fink was aware of an excessive risk to Plaintiff's safety from Defendant Aviles that he ignored or consciously disregarded. Moreover, Plaintiff's assertion that Defendant Fink should have known of such a risk because other officers told him or because he had access to log books is inadmissible hearsay and improper speculation. Even interpreting the evidence in the light most favorable to Plaintiff, Plaintiff has not presented evidence creating a genuine issue of material fact that Defendant Fink knew of and consciously disregarded an excessive risk of harm to Plaintiff.

With respect to failing to intervene, it is undisputed that Defendant Fink was not present when Defendant Aviles allegedly injured Plaintiff by yanking and pulling on the chains of his restraints. See FAC at 5-6; see also D. MSJ at 14 ("Fink was not personally involved in Aviles's

alleged actions"), and ECF No. 41-2, Declaration of Christopher H. Findley in Support of Defendant Fink's Motion for Summary Judgment ("Findley Decl.") at Exh 1 (Plaintiff's Deposition Testimony stating "so Fink was at the facility on March 31st? [] Right. [] but he didn't see Aviles pull on your chains? No."). There is no evidence that Defendant Fink was aware of the assault as it was occurring or that he had a reasonable opportunity to intercede and stop the assault. Plaintiff himself admits this. See P. Oppo. at 8 ("Defendant Fink was not present and in a position to intervene when Officer Aviles use[d] excessive force").

Because Plaintiff has failed to satisfy his burden and no facts have been provided establishing a genuine issue for trial, the Court **RECOMMENDS GRANTING** Defendant Fink's motion for summary judgment as to Plaintiff's claim of deliberate indifference based on a failure to protect or intervene.

### C. Supervisory Liability

Plaintiff alleges that Defendant Fink violated his Eighth Amendment right to be free from cruel and unusual punishment by failing to "adequately train custody staff in the appropriate use of force, by his failure to supervise Defendant and by his failure to investigate the incident or discipline the Defendant." FAC at 7. Plaintiff also states that "Defendant Fink failed to properly train Defendant Aviles to ensure that he do[es] not use excessive force against prisoners who have not done anything to provoke the use of force." Id. Plaintiff does not provide any additional facts regarding how Defendant Fink allegedly failed to train or supervise Defendant Aviles. FAC. In his motion for summary judgment, Plaintiff argues that Defendant Fink "failed to remedy the wrong by keeping Defendant F. Aviles away from Plaintiff" and permitted "the continuance of Defendant F. Aviles['] misbehavior and unprofessional conduct." P. MSJ at 9. Plaintiff concludes that Defendant Fink "was grossly negligent in supervising Defendant F. Aviles who committed wrongful acts." Id.

Defendant Fink contends that he cannot be liable a Defendant Aviles' supervisor as there is not *respondeat superior* liability under 1983 and there is no evidence to support any other claim. D. MSJ at 14-15.

///

1       1.   <u>Legal Standard</u>

2       "Supervisors may not be held liable under Section 1983 for the actions of subordinate

3 employees based on *respondeat superior* or vicarious liability." <u>Gomez v. Paramo</u>, 2018 WL

4 3642175, at *5 (S.D. Cal., Aug. 1, 2018) (citing <u>Crowley v. Bannister</u>, 734 F.3d 967, 977 (9th

5 Cir. 2013)).[5] A supervisor may be individually liable under § 1983 "if there exists either (1) his

6 or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection

7 between the supervisor's wrongful conduct and the constitutional violation." <u>Starr v. Baca</u>, 652

8 F.3d 1202, 1207 (9th Cir. 2011) (quoting <u>Hansen v. Black</u>, 885 F.2d 642, 646 (9th Cir. 1989)).

9 To be held liable, a supervisor need not be physically present when the alleged constitutional

10 injury occurs nor be "directly and personally involved in the same way as are the individual

11 officers who are on the scene inflicting constitutional injury." <u>Starr</u>, 652 F.3d at 1205 (citation

12 omitted). Rather, the requisite causal connection is established when a supervisor "set[s] in

13 motion a series of acts by others," or "knowingly refus[es] to terminate a series of acts by others

14 which [the supervisor] knew or reasonably should have known would cause others to inflict a

15 constitutional injury." <u>Id.</u> at 1207-08 (citation omitted). A supervisor may also be held liable

16 for his "own culpable action or inaction in the training, supervision, or control of his subordinates,

17 acquiescence in the constitutional deprivation," or "conduct that showed a reckless or callous

18 indifference to the rights of others." <u>Id.</u> at 1208 (citation omitted). Additionally, a supervisor

19 may be held liable if he implements a "policy so deficient that the policy itself is a repudiation of

20 constitutional rights and is the moving force of the constitutional violation." <u>Hansen</u>, 885 F.2d

21 at 646 (internal quotation marks and citation omitted).

22 ///

23

24
25 [5] <u>See</u> <u>also</u> <u>Lacy v. County of San Diego</u>, 2012 WL 4111507, at *5 (S.D. Cal., Sept. 18, 2012)
26 ("Supervisory personnel are generally not liable under section 1983 for the actions of their subordinates on a theory of vicarious liability, and there is no respondeat superior liability for
27 supervisors under the statute.") (citing <u>Hansen v. Black</u>, 852 F.2d 642, 645–46 (9th Cir.1989)).

28

18cv60-BAS (BLM)

2.    Analysis

Contrary to Plaintiff's argument, his declaration is not in conflict with Defendant Fink's declaration and does not present a "different story." P. Oppo. at 5. Plaintiff declares that he informed Defendant Fink that his cell had been searched by Defendant Aviles on March 29, 2017 for the purpose of harassing Plaintiff, but does not declare that he informed Defendant Fink of any physical harm or threats that he received from Defendant Aviles prior to the March 31, 2017 incident. P. Oppo. at 32-33. This does not conflict with Defendant Fink's declaration that he was not aware of any past physical confrontations between [Defendant] Aviles and [Plaintiff]" and that Plaintiff never informed him that "he was concerned about any physical threat from Defendant Aviles." Fink Decl. at 3. Defendant Fink does not claim to be unaware of the March 29, 2017 search about which Plaintiff complained. Id. Additionally, the fact that Plaintiff was in the small management yard which was located in front of Defendant Fink's office when Defendant Aviles was pretending to be mentally challenged, is not evidence of Defendant Fink's liability. P. Oppo. at 33. It also is mere speculation that Defendant Fink's assumed access to "log books" or cell search activity and discrepancies means Defendant Fink was aware of or recklessly indifferent to harm that Plaintiff might experience at the hands of Defendant Aviles. Defendant Fink does not dispute that he was aware of Plaintiff's complaints about the cell searches, only that he did not know of a risk of violence between Plaintiff and Defendant Aviles. D. MSJ; see also Fink Decl. Finally, Plaintiff's declaration that "other supervisors such as J. Alverez, made [Defendant Fink] aware of ongoing discrepancies" is speculative and not based on Plaintiff's personal knowledge and also fails to create a triable fact concerning Defendant Fink's liability.

a.    Defendant Fink's Failure to Train Defendant Aviles

Plaintiff's first argument is that Defendant Fink violated his right to be free from cruel and unusual punishment by failing to properly train Defendant Aviles on the proper use of force. FAC at 6-7. To prevail on a failure to train claim, a plaintiff must show the defendant was "deliberately indifferent to the need to train subordinates, and the lack of training actually caused the constitutional harm or deprivation of rights." Gleason v. Franklin, 2017 WL 3203404, at *9

18cv60-BAS (BLM)

(C.D. Cal., May 16, 2017) (quoting <u>Flores v. Cty. of Los Angeles</u>, 758 F.3d 1154, 1159 (9th Cir. 2014)). Additionally, "a pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference for purposes of failure to train." <u>Connick v. Thompson</u>, 563 U.S. 51, 62 (2011).

Plaintiff does not provide any additional facts or evidence supporting his argument that Defendant Fink failed to properly train Defendant Aviles. Plaintiff's argument assumes that Defendant Aviles used excessive force against Plaintiff without any provocation and that therefore, Defendant Fink failed to properly train Defendant Aviles. This argument is speculative and not supported by any facts. Plaintiff has not established that he has firsthand knowledge of how Defendant Fink did or did not train his correctional officers, including Defendant Aviles. Plaintiff's speculation about the training that did or did not occur is insufficient for summary judgment purposes. <u>See</u> Fed. R. Civ. P. 56(c)(4) ("An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated"). Moreover, Plaintiff has not established a pattern of similar constitutional violations by untrained employees. In fact, Plaintiff reported the allegedly retaliatory cell search to Defendant Fink on March 29, 2017 and the alleged assault occurred just two days later on March 31, 2017. Given that only two days elapsed between Plaintiff's complaint to Defendant Fink and the alleged incident, Plaintiff has not and cannot establish that Defendant Fink was deliberately indifferent to the need for training. Plaintiff has not presented evidence creating a triable issue of fact regarding Defendant Fink's liability based on a failure to train.

b. <u>Defendant Fink's Supervision of Defendant Aviles</u>

Plaintiff alleges that Defendant Fink violated his Eighth Amendment right to be free from cruel and unusual punishment by failing to supervise Defendant Aviles. FAC at 6-7. Plaintiff argues that Defendant Fink failed to keep Defendant Aviles away from Plaintiff, permitted Defendant Aviles to engage in unprofessional conduct, and "was grossly negligent in supervising Defendant F. Aviles who committed wrongful acts." P. MSJ at 9.

As stated above, "[s]upervisors may not be held liable under Section 1983 for the actions

of subordinate employees based on *respondeat superior* or vicarious liability." <u>Gomez</u>, 2018 WL 3642175, at *5 (citing <u>Crowley</u>, 734 F.3d 967 at 977); <u>see also</u> <u>Lacy</u>, 2012 WL 4111507, at *5 ("[s]upervisory personnel are generally not liable under section 1983 for the actions of their subordinates on a theory of vicarious liability, and there is no respondeat superior liability for supervisors under the statute.") (citing <u>Hansen</u>, 852 F.2d at 645–46). Here, Plaintiff is arguing that Defendant Fink should be held liable because he was Defendant Aviles' supervisor at the time Defendant Aviles engaged in wrongful conduct. This argument is exactly what the *respondeat superior* doctrine prohibits. <u>Gomez</u>, 2018 WL 3642175, at *5. Moreover, as discussed above, Plaintiff has not presented any facts supporting a finding that Defendant Fink was involved in the alleged violation or caused the violation. <u>See</u> FAC at 5-6, P. Oppo. at 8 ("[a]lthough Defendant Fink was not present and in a position to intervene when Officer Aviles use[d] excessive force"), D. MSJ at 14 ("Fink was not personally involved in Aviles's alleged actions") and Findley Decl. at Exh 1 (Plaintiff's Deposition Testimony stating "so Fink was at the facility on March 31st? [] Right. [] but he didn't see Aviles pull on your chains? No.").[6] Finally, as discussed above, the undisputed evidence shows that Defendant Fink was not aware that Defendant Aviles presented a physical danger to Plaintiff so there was no reason to keep them separate. Fink Decl. at ¶¶ 9-10. Plaintiff has not created a triable issue of fact as to this theory of liability.

     c.   <u>Defendant Fink's Failure to Investigate Defendant Aviles</u>

Plaintiff alleges that Defendant Fink violated his right to be free from cruel and unusual punishment by failing to investigate the March 31, 2017 incident with Defendant Aviles. FAC at 6-7. In order to state a claim under § 1983, the alleged conduct must deprive the claimant of some right, privilege, or immunity protected by the constitution. <u>See</u> 42 U.S.C. § 1983. Here,

---

[6] Plaintiff's motion for summary judgment does state that "Plaintiff made sergeant Fink aware of Defendant F. Aviles['] wrongdoings prior to the March 31, 2017 use of excessive force and participated directly in the alleged constitutional violation." P. MSJ at 9. However, Plaintiff does not allege or provide any facts supporting the idea that Defendant Fink directly participated in the alleged deprivation of his constitutional rights.

the alleged failure to investigate, even if true, does not state a claim under § 1983 because inmates do not have a constitutional right to an investigation.  <u>See</u> <u>also</u> <u>Mayes v. Frasiher</u>, 2018 WL 5920830, at *4 (E.D. Cal., Nov. 13, 2018) (finding that "there is no constitutional right to require prison officials to investigate an inmate's complaints" where plaintiff claimed that defendants failed to investigate his claims of assault.) (citing <u>Manzanillo v. Jacquez</u>, 555 Fed. Appx. 651, 653 (9th Cir. 2014) (finding that the "district court properly granted summary judgment on Manzanillo's claim alleging that defendants failed adequately to investigate his excessive force claims in violation of prison policy because that alleged failure does not constitute a violation of a federal right"); <u>Dixon v. Oleachea</u>, 2016 WL 3538367 at *5 (E.D. Cal. 2016) (stating that "a prisoner has no constitutional right to obtain an official investigation upon request." (citing <u>Barkey v. Reinke</u>, 2010 WL 3893897, at *13 (D. Idaho 2010)); and <u>Koch v. Austin</u>, 2006 WL 403818, at *5 (E.D. Cal. 2006) (finding that "Plaintiff's allegations that defendants failed to accurately report and document the November 23, 2002 incident simply do not give rise to a claim for relief under federal law, due process, equal protection or otherwise" as Plaintiff does not have a constitutionally protected right to any particular documentation or investigation.).  Plaintiff has not established a triable issue of fact that Defendant Fink's alleged failure to investigate contributed to Defendant Aviles' alleged misconduct on March 31, 2017. Accordingly, Defendant Fink's alleged failure to investigate did not deprive Plaintiff of some right, privilege, or immunity protected by the constitution and can not support a constitutional violation.

      d.    <u>Defendant Fink's Failure to Discipline Defendant Aviles</u>

Plaintiff alleges that Defendant Fink violated his right to be free from cruel and unusual punishment by failing to properly discipline Defendant Aviles.  FAC at 6-7.  "A single decision by a supervisor not to reprimand a subordinate officer, without more, is not sufficient to establish the type of ratification that would lead to liability under § 1983."  <u>Peschel v. City of Missoula</u>, 686 F.Supp.2d 1092, 1105–1106 (D. Mont. 2009) (citing <u>Logan v. City of Pullman Police Dept.</u>, 2006 WL 1148727, *3 (E.D. Wash. 2006). "[A] plaintiff must also show the supervisor "was deliberately indifferent to acts by others which he knew or reasonably should have known would

cause others to inflict [plaintiff's] alleged constitutional injuries." Id. (quoting Logan, at *4). "Without something more, [a supervisor's] discipline decisions *after* the incident does not satisfy this deliberate indifference standard." Id. (quoting Logan, at *4) (emphasis in original); see also Kanae v. Hodson, 294 F.Supp.2d 1179, 1191 (D.Haw.2003) (requiring "something more" than a mere failure to discipline). Here, there is no evidence or facts supporting the argument that Defendant Fink's failure to discipline Defendant Aviles "was a conscious, affirmative choice to ratify" Defendant Aviles' allegedly unconstitutional conduct. Id. (quoting Logan, at *4). In addition, given that only two days passed between Plaintiff's complaints to Defendant Fink regarding the allegedly inappropriate cell searches and the alleged assault by Defendant Fink, Plaintiff has not established a triable issue of fact that Defendant Fink's alleged failure to discipline contributed to Defendant Aviles' alleged misconduct on March 31, 2017. And, Defendant Fink's failure to discipline Defendant Aviles for the alleged assault on March 31, 2017 cannot provide constitutional liability because the decision occurred after the incident.

e.    Unconstitutional Policy

A supervisor may be held liable under § 1983 if he or she  implements a "policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation." Hansen, 885 F.2d at 646. Here, Plaintiff does not allege or submit evidence that Defendant Fink implemented any such policy. Plaintiff does not identify a specific policy that resulted in the alleged constitutional violations and there are no facts establishing a policy that violated Plaintiff's constitutional rights.

f.    Conclusion

Plaintiff has not submitted evidence that creates a genuine issue of material fact concerning Defendant Fink's alleged failure to supervise, train, investigate, or discipline Defendant Aviles, the existence of a custom or practice that would otherwise give rise to potential liability or establish a causal connection between Defendant Fink and the alleged constitutional violation, or the implementation of a "policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation." Hansen, 885 F.2d at 646; see also FAC, and P. Oppo. Accordingly, the Court **RECOMMENDS**

that Defendants' motion for summary judgment regarding Plaintiff's claims against Defendant Fink based on supervisory liability be **GRANTED**.

### D.   Failure to Exhaust

Defendants argue that summary judgment also should be granted in favor of Defendant Fink because Plaintiff failed to exhaust his administrative remedies. D. MSJ at 15-18. Defendants argue that Plaintiff only filed one appeal related to the March 31, 2017 incident and the appeal did not mention Defendant Fink or contain allegations that could be construed against Defendant Fink. Id. at 15.  Defendants note that the prison appeals system was available to Plaintiff who was able to exhaust his appeal against the other Defendants and who has filed approximately one hundred appeals since being incarcerated. Id. at 17.

Plaintiff contends that he has satisfied the exhaustion requirement.  P. Oppo. at 3, 33 (Plaintiff's Decl. ¶¶ 9-10).

#### 1.  Legal Standard

##### a. The Prison Litigation Reform Act

The Prison Litigation Reform Act ("PLRA") of 1995 provides that:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available, are exhausted.

42 U.S.C. § 1997e(a).  "Congress enacted § 1997e(a) to reduce the quantity and improve the quality of prisoner suits."  Porter v. Nussle, 534 U.S. 516, 524 (2002).  The United States Supreme Court has confirmed that exhaustion is a mandatory prerequisite to filing suit in federal court.  Id.  Failure to exhaust may not be waived.  See Woodford v. Ngo, 548 U.S. 81, 85 (2006) ("[e]xhaustion is no longer left to the discretion of the district court").  The United States Supreme Court has stated that "[t]here is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court."  Jones v. Bock, 549 U.S. 199, 211 (2007).

To prevail on a motion for summary judgment, the defendant must prove that the plaintiff failed to properly exhaust available administrative remedies. Albino, 747 F.3d at 1172; see also Jones, 549 U.S. at 216 (inmates are not required to specifically plead or demonstrate exhaustion in his or her complaint because failure to exhaust is an affirmative defense under the PLRA). The defendant cannot demonstrate an absence of exhaustion unless some relief remains available. Brown v. Valoff, 422 F.3d 926, 936–37 (9th Cir. 2005). Therefore, the defendant must produce evidence that the plaintiff did not properly exhaust a remedy that is available as a practical matter in that it must be capable of use or at hand. Albino, 747 F.3d at 1171.

Once the defendant meets that burden, the plaintiff must "come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." Id. at 1172. The Ninth Circuit has consistently held that administrative remedies were unavailable where the inmate was thwarted by affirmative misconduct or obstruction by prison officials. See Sapp v. Kimbrell, 623 F.3d 813, 823 (9th Cir. 2010) (screening out an inmate's administrative grievance for improper reasons rendered administrative remedies unavailable) superseded by statute on other grounds as stated in Avery v. Paramo, 2015 WL 4923820, at n.14 (S.D. Cal. Aug. 18, 2015); see also Nunez v. Duncan, 591 F.3d 1217, 1226 (9th Cir. 2010) (a prison warden's mistake in misdirecting the inmate rendered administrative remedies unavailable). However, an inmate who did not make any attempt to properly utilize the prison grievance system cannot sidestep the exhaustion requirement by arguing that it now would be futile to attempt to exhaust within the prison system. Booth v. Churner, 532 U.S. 731, 741 n.6 (2001) ("[W]e stress the point … that we will not read futility or other exceptions into statutory exhaustion requirements where Congress has provided otherwise."); see also Woodford, 548 U.S. at 83–84, 100 (explaining that the PLRA exhaustion requirement is not satisfied if the inmate files an "untimely or otherwise procedurally defective . . . appeal," and "if the party never pursues all available avenues of administrative review, the person will never be able to sue in federal court").

Accordingly, "to properly exhaust administrative remedies prisoners must 'complete the administrative review process in accordance with applicable procedural rules,'" defined by the

specific prison grievance process in question. <u>Jones</u>, 549 U.S. at 218 (2007) (quoting <u>Woodford</u>, 548 U.S. at 88). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." <u>Woodford</u>, 548 U.S. at 90–91. This requirement serves PLRA's purpose because it "gives prisoners an effective incentive to make full use of the prison grievance process and accordingly provides prisons with a fair opportunity to correct their own errors." <u>Id.</u> at 94. Therefore, an inmate incarcerated in CDCR must comply with all the regulations and procedures of California's prison administrative appeals system to properly exhaust his claim. <u>See</u> <u>Marella v. Terhune</u>, 568 F.3d 1024, 1027 (9th Cir. 2009) (citation omitted) ("[t]he California prison system's requirements 'define the boundaries of proper exhaustion'" for inmates suing in California).

### b. California Regulations

To properly exhaust available remedies for an administrative decision or perceived mistreatment in California, an inmate must proceed through three formal levels of review. <u>See</u> Cal Code Regs. tit. 15, §§ 3084.1–3084.9. The three levels include: "(1) a first level appeal, to be conducted by the division head or his or her designee;" "(2) a second level appeal, to be conducted by the hiring authority or his or her designee; and (3) a third level appeal, to be conducted by the Office of Appeals in Sacramento, California (formerly the Inmate Appeals Branch)." <u>Jones v. Paramo</u>, 2013 WL 4517829, at *6 (S.D. Cal. Aug. 19, 2013); Cal. Code Regs. tit. 15, §§ 3084.1, 3084.7. "The third level review constitutes the decision of the Secretary of the California Department of Corrections and Rehabilitation on an appeal" and "exhausts administrative remedies." Cal. Code Regs. tit. 15, § 3084.7(d)(3).

The inmate must submit his or her appeal "within 30 calendar days of: (1) The occurrence of the event or decision being appealed, or; (2) Upon first having knowledge of the action or decision being appealed, or; (3) Upon receiving an unsatisfactory departmental response to an appeal filed." <u>Id.</u> § 3084.8(b). Any prisoner complaint alleging staff misconduct must be accompanied by a "Rights and Responsibility Statement." <u>Id.</u> § 3084.1(i)(1). "Failure to attach all necessary supporting documents may result in the appeal being rejected . . . . and [t]he

18cv60-BAS (BLM)

appellant shall be allowed an additional 30 days to secure any missing supporting documents and resubmit the appeal." Id. § 3084.3.  An appeal may also be cancelled if it is untimely.  Id. § 3084.6(c)(4).  Once cancelled, the appeal shall not be accepted unless a determination is made that the cancellation was made in error or new information is received making the appeal eligible for further review.  Id. §§ 3084.6(a)(3), 3084.6(e).  A cancellation does not exhaust an appeal, though a cancellation at the third level may itself be appealed.  Id. §§ 3084.6(e).

The inmate may initiate litigation in federal court "only after the administrative process ends and leaves his grievances unredressed."  Vaden v. Summerhill, 449 F.3d 1047, 1051 (9th Cir. 2006).  "Administrative remedies shall not be considered exhausted relative to any new issue, information, or person later named by the appellant that was not included in the originally submitted CDCR Form 602 …, and addressed through all required levels of administrative review up to and including the third level."  Cal Code Regs. tit. 15, § 3084.1(b).

2.    Evidence

Defendants submitted declarations signed under penalty of perjury from E. Frijas, the Appeals Coordinator at Richard J. Donovan Correctional Facility ("RJDCF") and M. Voong, the Chief of the Office of Appeals, to establish that Plaintiff had access to an administrative process and failed to exhaust the available administrative remedies.  See ECF No. 41-5, Declaration of E. Frijas In Support of Defendants' Motion for Summary Judgment for Failure to Exhaust Administrative Remedies ("Frijas Decl."); see also ECF No. 41-7, Declaration of M. Voong In Support of Defendants' Motion for Summary Judgment for Failure to Exhaust Administrative Remedies ("Voong Decl.").  E. Frijas describes the administrative grievance process that was available to Plaintiff at RJD, including that RJD records "are kept in the ordinary course of business at or near the time that the [Inmate Appeals Office ("IAO")] receives an inmate appeal."  Frijas Decl. at ¶ 6.  E. Frijas explained that the California Attorney General's Office requested that IAO search its files and records

> to ascertain whether inmate Duwayne Jackson, CDCR No. 141016 (Plaintiff) submitted any appeals, between March 27, 2017 and February 26, 2018, relating to an alleged violation of Plaintiff's rights by Defendant Fink, including any

allegations arising from failing to supervise or train correctional officer Aviles or preventing Aviles from using excessive force against Plaintiff while Plaintiff was at RJDCF.

Id. at ¶ 5. A thorough search of the records revealed that

> On April 10, 2017, the IAO received a staff complaint appeal from Plaintiff regarding allegations of misuse of force against Correctional Officer Aviles, relating to an incident that occurred on March 31, 20 17, while Plaintiff was at RJDCF. The appeal [was] accepted for review and was assigned Appeal Log No. RJD-17-01882. On May 4, 2017, the appeal was partially granted at the Second Level of review, in that a confidential inquiry [in]to the appeal was conducted. As a result of the confidential appeal inquiry, it was found that Officer Aviles did not violate CDCR policy. Records indicate that Plaintiff submitted the appeal for a Third Level of review. On September 8, 2017, the appeal was denied at the Third Level of review. This appeal did not contain any allegations against Defendant Fink.

Id. at ¶ 6, Exh. A. Apart from the complaint mentioned above, the IAO "has not accepted and/or processed for review any timely or properly filed appeals or staff complaint from Plaintiff relating to the allegations" against Defendant Fink. Id. at ¶ 7.

M. Voong states that he is "personally familiar with the record-keeping system at the Office of Appeals and [he] is able to verify the status of a California inmate or parolee's third-level administrative appeals." Voong Decl. at ¶ 2. M. Voong declares that "[t]he Office of Appeals receives and maintains all inmate appeals . . . accepted for the third level review for all non-medical appeals, the third and final level of review in CDCR's inmate-appeals process for all non-medical appeals, and renders decisions on such appeals." Id. at ¶ 3. M. Voong further explains that "[u]pon receipt by the Office of Appeals, appeals are logged into a computer database known as the Inmate Appeals Tracking System (IATS)." Id. at ¶ 5. M. Voong declares the Office of the Attorney General requested that the Office of Appeals search its records to locate all third-level appeals submitted by Plaintiff "between March 27, 2017 and February 26, 2018, relating to an alleged violation of Plaintiffs rights by Defendant Fink." Id. at ¶ 7. M. Voong explains that a thorough search of the records (by his staff) revealed that his office received and accepted three staff complaints from Plaintiff during the relevant time period. Id.

at ¶ 8.  The first appeal log received on April 20, 2017 related "to an alleged misuse of force by Correctional Officers at RJDCF on January 13, 2017, in retaliation to a previous incident in which Plaintiff assaulted Officer Navarro," was denied at the Third Level of review on June 29, 2017, and did not pertain to the allegations against Defendant Fink.  Id. at ¶ 8(a), Exh. A.  The second appeal log received on June 14, 2017 discussed Plaintiff's allegations of Defendant Aviles' misuse of force on March 31, 2017 and also was denied at the third level of review on September 28, 2017.  Id. at ¶ 8(b), Exh. B.  The final appeal log was received on September 14, 2017, related "to allegations against Officers Mendoza and Osgood for failing to properly segregate inmates during transport[,] was  denied at the third  level of review on December 11, 2017, and did not pertain to the allegations against Defendant Fink.  Id. at ¶ 8(c), Exh. C.   Apart from these three appeal logs, the Office of Appeals did "not receive[], [] accept[], or screen[] out at the Third Level of review any staff complaints from Plaintiff, from March 27, 2017, to February 26, 2018 while at RJDCF, relating to allegations" against Defendant Fink.  Id. at ¶ 9.

     3.   <u>Analysis</u>

     Pursuant to Cal. Code Regs., tit. 15, § 3084.2. an inmate who is completing a CDCR Form 602 for an appeal must

> list all staff member(s) involved and shall describe their involvement in the issue. To assist in the identification of staff members, the inmate or parolee shall include the staff member's last name, first initial, title or position, if known, and the dates of the staff member's involvement in the issue under appeal. If the inmate or parolee does not have the requested identifying information about the staff member(s), he or she shall provide any other available information that would assist the appeals coordinator in making a reasonable attempt to identify the staff member(s) in question.

Cal. Code Regs., tit. 15, § 3084.2.  Failure to identify a Defendant in the Form 602, "bars federal review as to those Defendants not named."   <u>Carter v. Paramo</u>, 2018 WL 4579854, at *7 (S.D. Cal., Sept. 25, 2018) (citing <u>Woodford v. Ngo</u>, 548 U.S. 81, 90–91 (2006) ("Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicating system can function effectively without imposing some orderly structure on the

course of its proceedings."); see, e.g., Martinez v. Swift, 2015 WL 1349525, *2 (N.D. Cal. 2015) (Seeborg, J.) (granting summary judgment for non-exhaustion because the grievance "does not mention [defendant], or describe with any specificity his actions or words" and therefore did not comply with § 3084.2(a)(3) ); Panah v. State of Cal. Dep't of Corr. and Rehabilitation, 2015 WL 1263494, *9–*10 (N.D. Cal. 2015) (Freeman, J.) (even if plaintiff's failure to pursue inmate appeal to highest level is excused, he failed to properly exhaust his claim against the warden because his inmate appeal did not name the warden or describe the basis for his liability); Gray v. Smith, 2015 WL 875482, *2–*3 (N.D. Cal. 2015) (Alsup, J.) (granting summary judgment for non-exhaustion where inmate appeal described an incident at the prison but did not name the warden and did not describe a widespread practice or that the warden knew of the incident and failed to stop it); see also Avery v. Paramo, 2015 WL 4923820, at *11 (S.D. Cal., Aug. 18, 2015) (finding that "Plaintiff's CDCR 602 Log. Nos. 13–2451 and 13–3017 would suffice to satisfy § 1997e(a)'s exhaustion requirement if Defendants [] were included in a list of staff members involved, if they "describe[d] their involvement in the issue under appeal," and if they included the dates of each staff member's involvement" and noting that "[t]he California Code of Regulations requires that Plaintiff's CDCR Form 602s "list all staff members involved," and "describe their involvement in the issue under appeal," including the "dates of the staff member's involvement.") (quoting Cal.Code Regs. tit. 15, § 3084.2(3))). Here, the record establishes that Plaintiff did not name Defendant Fink in his prison appeals. P. Oppo. at 37-45; see also Findley Decl. at Exh. 2; Voong Decl. at Exh. 3, and Frijas Decl. at Exh. A.

The Court finds that Defendants have satisfied their initial burden of establishing that Plaintiff did not properly exhaust his claim against Defendant Fink. Additionally, Defendants have established that the prison appeals system was available to Plaintiff who has filed almost one hundred appeals since being incarcerated and who successfully exhausted his appeal against the other Defendants in the instant mater. Findley Decl. at Exh. 1; see also Voong Decl. at Exh. C, and Frijas Decl. at Exh. C. Therefore the burden of production shifts to Plaintiff and he must come forward with evidence showing either that he properly exhausted all available administrative remedies before filing suit, or that "there is something particular in his case that

made the existing and generally available administrative remedies effectively unavailable to him." Williams v. Paramo, 775 F.3d 1182, 1191 (9th Cir. 2015) (quoting Albino, 747 F.3d at 1172). Plaintiff has made no such showing. Accordingly, the Court **RECOMMENDS** that Defendant's motion for summary judgment based upon Plaintiff's failure to exhaust the administrative remedies be **GRANTED**.

## II.  **Plaintiff's Motion for Summary Judgment**

Plaintiff moves for summary judgment on all of his claims. P. MSJ. First, Plaintiff argues that Defendant Aviles knowingly used excessive force to "maliciously and sadistically" injure Plaintiff. Id. at 7-8. Second, Plaintiff argues that Defendant Fink violated his constitutional rights because prior to March 31, 2017, Defendant Fink knew that Defendant Aviles was harassing Plaintiff and engaging in unreasonable searches of Plaintiff's cell and Defendant Fink failed to keep Defendant Aviles away from Plaintiff. Id. at 9-10. Plaintiff further alleges that Defendant Fink was "grossly negligent" in supervising Defendant Aviles. Id. at 9. Finally, Plaintiff argues that Defendants Mendoza and Osgood violated his Eighth Amendment rights to safety and protection by transporting him with another prisoner. Id. at 11-16.

Defendants oppose Plaintiff's motion and argue that there are triable issues of material fact as to the claims against Defendant Aviles, Mendoza, and Osgood and no evidence against Defendant Fink so summary judgment should be granted in favor of Defendant Fink. D. Oppo.

### A.  **Defendant Aviles**

Plaintiff alleges that on March 27, 2017, Defendant Aviles searched his cell and disposed of several of his personal items, including his toiletries and photographs. FAC at 3. Plaintiff reported the search to Sergeant Alvarez who told Plaintiff that Defendant Aviles had made a mistake and made sure the items were replaced. Id. Plaintiff next alleges that on March 28, 2017, Defendant Aviles performed another search of his cell for harassment purposes. Id. On March 31, 2017, Defendant Aviles began verbally harassing Plaintiff and pretending as though he was mentally disabled to torment Plaintiff. Id. at 4. Defendant Aviles acted this way throughout the day and challenged Plaintiff to a fight in the yard. Id. When confronted about his behavior by Plaintiff, Defendant Aviles said that it was because Plaintiff "like[d] to do

paperwork and tell the supervisors on us." Id. Later that afternoon, when Plaintiff was in the yard, Defendant Aviles approached Plaintiff with a waist restraint to return him to his cell. Id. at 5. Plaintiff alleges that after securing the restraint cuffs, Defendant Aviles tugged and pulled on the chains for the purpose of causing harm to Plaintiff. Id. This caused Plaintiff to bleed and he demanded to see the supervising sergeant as he refused to leave the yard with Defendant Aviles. Id. at 6. Plaintiff was later seen by the medical technician due to the injuries he sustained to his writs and arms. Id.

Plaintiff argues that summary judgment should be granted in his favor for Defendant Aviles' use of excessive force. P. MSJ at 1, 7-8. Defendants contend that Plaintiff cannot show undisputed facts regarding his claim of excessive force against Defendant Aviles. D. Oppo. at 10.

### 1. Legal Standard

The Eighth Amendment prohibits prison officials from using excessive physical force against inmates. Farmer, 511 U.S. at 832. The inquiry is not whether the prisoner suffered a certain level of injury, but "'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" Wilkins v. Gaddy, 559 U.S. 34, 37 (2010) (citation omitted); Hamilton v. Brown, 630 F.3d 889, 897 (9th Cir. 2011); see Farmer, 511 U.S. at 835–36 (noting that a plaintiff must allege that the defendant used force knowing that harm would occur). Courts examine the following five factors to determine whether a plaintiff has satisfied the malicious and sadistic standard: (1) the inmate's injury; (2) the need for the use of force; (3) "'the relationship between that need and the amount of force used; (4) the threat reasonably perceived by the responsible prison officials; and (5) any efforts made to temper the severity of a forceful response.'" Martinez v. Stanford, 323 F.3d 1178, 1184 (9th Cir. 2003) (quoting Hudson v. McMillian, 503 U.S. 1, 7 (1992)); see also Whitley v. Albers, 475 U.S. 312, 321 (1986); Madrid v. Gomez, 889 F.Supp. 1146, 1247 (N.D. Cal. 1995). "The absence of serious injury is a relevant, but not dispositive, additional factor to be considered in the subjective analysis." Nunez v. Ramirez, 2011 WL 7096611, at *7 (S.D. Cal. Nov. 14, 2011) (citing Hudson, 503 U.S. at 7). [T]he use of excessive physical force against a prisoner may

constitute cruel and unusual punishment [even] when the inmate does not suffer serious injury. See Hudson, 503 U.S. at 4. "Injury and force, however, are only imperfectly correlated, and it is the latter that ultimately counts. An inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury." Wilkins, 559 U.S. at 38.

### 2. Plaintiff's Evidence

In support of his motion for summary judgement against Defendant Aviles, Plaintiff submitted his declaration signed under penalty of perjury stating that (1) he was assaulted by Defendant Aviles, (2) Defendant Aviles used excessive force against him, and (3) camera footage captured Defendant Aviles' misconduct on March 31, 2017. P. MSJ at 2, Declaration In Support of Motion for Summary Judgment; see also ECF No. 47 at 2 (missing page from Plaintiff's Declaration In Support of Motion for Summary Judgment accepted on discrepancy). Plaintiff also submitted a Crime/Incident Report from Defendant Aviles. P. MSJ at 19. In the document, Defendant Aviles reports that after he handcuffed Plaintiff on March 31, 2017, Plaintiff began "to hit his hands and wrist against the handcuff port rapidly and multiple times" and told Defendant Aviles that he would "make [Defendant Aviles] catch a fucking case." Id. Plaintiff submitted a Medical Report of Injury or Unusual Occurrence form from the March 31, 2017 incident showing abrasions and scratches on his arm and wrists and noting that Plaintiff reported being "scratched by wrist chains." Id. at 22. Finally, Plaintiff submitted a copy of 15 CCR 3268.2 regarding the use of restraints. Id. at 24-25.

### 3. Defendants' Evidence

In support of their opposition, Defendants submitted a declaration from Defendant Aviles signed under penalty of perjury. Aviles Decl. Defendant Aviles declares that he "never mocked, imitated, or harassed Plaintiff Duwayne Jackson[,] never challenged Jackson to a fight[, and] never searched Jackson's cell for malicious reasons or to harass Jackson." Id. at ¶ 2. Defendant Aviles further declares that he did not use force on Plaintiff or cause injury to Plaintiff and that

> On March 31, 2017, I attempted to place restraints on Jackson, in order to escort
> him back from the small management yard where he was exercising. Jackson

attempted to pull the restraints from my hand. I ordered Jackson to stop pulling the cuffs. Jackson said, "Fuck you Aviles" and started to hit his hands and wrists against the food port rapidly and multiple times. I ordered Jackson to stop hitting his hands against the food port. Jackson responded "Fuck you motherfucker, I'm a make you catch a fucking case." Jackson stopped hitting his hands and wrists and demanded to talk with Sergeant Fink. I told Jackson that I needed to remove the restraints in order for him to speak with Sergeant Fink. Jackson complied and I removed the restraints. I then left and informed Sergeant Fink what happened.

Id. at ¶ 3-4. Defendants also submitted excerpts from Plaintiff's deposition testimony. ECF No. 49-1, Declaration of Christopher H. Findley In Support of Defendants' Opposition to Plaintiff's Motion for Summary Judgement ("Findley Decl. 2") at Exh. 1. In the testimony Plaintiff recounts his version of the March 31, 2017 incident, explains how Defendant Aviles hurt him, and denies telling Defendant Aviles that he was going to make him "catch a case." Id.

4. <u>Analysis</u>

In deciding a motion for summary judgment, a court may not resolve conflicting evidence. <u>Soremekun</u>, 509 F.3d at 984. Rather, summary judgment may be granted only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); <u>Anderson</u>, 477 US at 248. Plaintiff has failed to carry his initial burden of demonstrating that summary judgment is proper and that no reasonable trier of fact could find other than for him.

As an initial matter, Plaintiff himself recognizes that there are genuine disputed issues regarding the material facts of his claims against Defendant Aviles. P. MSJ at 10 ("[t]he declarations of the Plaintiff, and the defendants are squarely contradictory as to what force was used, when it was used, and why it was used"). Additionally, apart from his declaration, none of the other evidence Plaintiff submits supports his position. Defendant Aviles' crime incident report highlights the disputed facts and states that Plaintiff's March 31, 2017 injuries were self-inflicted. <u>Id.</u> at 19. Plaintiff's Medical Report of Injury or Unusual Occurrence shows injuries and that Plaintiff stated that he was scratched by his wrist chains, but does not provide any further context about how Plaintiff came to be injured. <u>Id.</u> at 22. Defendants have met their burden of showing that summary judgment is not appropriate. The declaration of Defendant

Aviles clearly demonstrates that there are genuine issues of material facts for trial. Aviles Decl. Defendant Aviles declares that he did not (1) pretend to be mentally disabled, (2) harass Plaintiff, (3) search Plaintiff's cell for malicious reasons, or (4) use excessive force on Plaintiff. Id. at ¶ ¶ 2-4. For these reasons, the Court **RECOMMENDS** that Plaintiff's motion for summary judgment as to Defendant Aviles be **DENIED**.

### B. Defendant Fink

Plaintiff alleges that Defendant Fink violated his Eighth Amendment right to be free from cruel and unusual punishment by failing to adequately train or supervise Defendant Aviles, investigate the incident, discipline Defendant Aviles, or protect Plaintiff. FAC at 6-7.

Defendants contend that "Plaintiff cannot establish that the undisputed facts support summary judgment against Defendant Fink [and that] to the contrary the Court should grant summary judgment in favor of Fink." D. Oppo. at 11.

Defendant Fink submitted a declaration signed under penalty of perjury declaring that (1) he was not present when Defendant Aviles restrained and allegedly injured Plaintiff, (2) he was unaware of any previous physical confrontations between Plaintiff and Defendant Aviles, and (3) Plaintiff never informed him of a physical threat from Defendant Aviles. Fink Decl. Defendant Fink has met his burden of showing that summary judgment in favor of Plaintiff against Defendant Fink is not appropriate and for the reasons set forth above [see supra at 7-26], the Court instead **RECOMMENDS** that summary judgment be granted in favor of Defendant Fink.

### C. Defendants Osgood and Mendoza

Plaintiff alleges that while he was on suicide watch in the mental health crisis bed alternative housing unit on May 3, 2017, Defendant Mendoza approached his cell to escort Plaintiff for transfer to a mental health crisis bed at California State Prison Lancaster. FAC at 8. Defendant Mendoza escorted Plaintiff to an area where he waited and observed Defendant Osgood preparing another inmate, inmate Razon, for transfer as well. Id. As Plaintiff and inmate Razon were escorted to the transport van, Plaintiff asked Defendant Mendoza if he would be separated from inmate Razon to which Defendant Mendoza responded, "no." Id. Plaintiff alleges that this was a violation of prison policy as he is a protective custody inmate and should remain

separated from general population inmates at all times.  Id.  After being placed in the back of the transport van with inmate Razon, Plaintiff alleges that he told Inmate Razon that he was "currently undergoing suicidal id[e]ation" and that he had been retaliated against in Facility C. Id. at 9.  At that point, inmate Razon began calling Plaintiff a "protective custody rat" and kicking him.  Id.  This activity lasted for three hours despite Plaintiff's screams and cries for help.  Id.  Plaintiff also alleges that when he finally arrived at Lancaster, he heard Defendants Mendoza and Osgood laughing about the fact that they transported a general population inmate with a sensitive needs yard inmate.  Id. at 10.   Plaintiff reported that he had sustained injuries but they were not recorded until Plaintiff later reached California State Prison in Sacramento.  Id.  The injuries were documented on a CDCR 7219 form.  Id.  Plaintiff alleges that Defendants Mendoza and Osgood violated his Eighth Amendment right to be free from cruel and unusual punishment and that they were deliberately indifferent to the danger he faced from inmate Razon.  Id.

Plaintiff argues that summary judgment is in his favor against Defendants Mendoza and Osgood for their deliberate indifference to his safety.  P. MSJ at 1, 11-16.  Defendants contend that Plaintiff cannot show undisputed facts supporting summary judgment for deliberate indifference against Defendants Mendoza and Osgood.  D. Oppo. at 14.

1.   Legal Standard

The appropriate legal standard for deliberate indifference to a serious risk is set forth in Section I. B. 1 above.  See supra at p. 10.

2.   Plaintiff's Evidence

In support of his motion for summary judgment, Plaintiff submitted his declaration signed under penalty of perjury stating that he "was beaten for three hours by being kicked" during his May 3, 2017 transport and that Defendants Mendoza and Osgood were aware of the danger of placing Plaintiff in the same transport van as inmate Razon, a general population inmate.  ECF No. 47 at 2 (missing page from Plaintiff's Declaration In Support of Motion for Summary Judgment accepted on discrepancy).  Plaintiff also submitted a copy of an Informational CDC From 128-B describing his request to be placed in the sensitive needs yard.  P. MSJ at 31, Exh.

31

E.

### 3. Defendants' Evidence

In support of their opposition, Defendants submitted declarations from Defendant Mendoza and Defendant Osgood signed under penalty of perjury. ECF No. 49-4, Declaration of G. Mendoza In Support of Defendants' Opposition to Plaintiff's Motion for Summary Judgement ("Mendoza Decl."); see also ECF No. 49-5, Declaration of C. Osgood In Support of Defendants' Opposition to Plaintiff's Motion for Summary Judgement ("Osgood Decl."). Defendants Mendoza and Osgood declared that they were "assigned to transport Inmate Dwayne Razon and Plaintiff Duwayne Jackson from RJD to California State Prison, Los Angeles County at Lancaster (LAC)." Mendoza Decl. at ¶ 2; see also Osgood Decl. at ¶ 2. Defendants Mendoza and Osgood also declared that they were unaware of a CDCR policy preventing a sensitive needs yard inmate from being transferred with a general population inmate and that when asked if they had any problems being transferred together neither Plaintiff nor inmate Razon objected. Mendoza Decl. at ¶ ¶ 3-4; see also Osgood Decl. at ¶ ¶ 3-4. Finally, Defendants Mendoza and Osgood declare that the transport van that was used to move Plaintiff and inmate Razon had a camera in the back which allowed Defendants Mendoza and Osgood "to monitor the inmates the entire time." Mendoza Decl. at ¶ 5; see also Osgood Decl. at ¶ 5. Either Defendant Mendoza or Defendant Osgood was with the van for the duration of the transport and Defendants Mendoza and Osgood never saw inmate Razon kick or attack Plaintiff. Mendoza Decl. at ¶ 6; see also Osgood Decl. at ¶ 6.

Defendants also submitted excerpts from Plaintiff's deposition testimony. Findley Decl. 2 at Exh. 1. In the testimony Plaintiff states that he protested when Defendants Mendoza and Osgood tried to place him in the van and informed them that he was suicidal. Id. at 23. He also reiterated the points made in his FAC and stated that inmate Razon called him a rat and kicked him approximately fifteen times. Id. at 25. Plaintiff further testified that he did not seek medical attention at Lancaster and that he is not aware of any rules requiring general population inmates and sensitive needs yard inmate to be separated during transport, but understands it to be "protocol." Id. at 28.

Finally, Defendants submitted excerpts from the deposition of inmate Razon. Findley Decl. 2 at Exh. 2. Inmate Razon testified that he did not hit, kick, or attack Plaintiff during the May 3, 2017 transport. Id. at 39-40. Inmate Razon further testified that Plaintiff never told him that he was in the sensitive needs yard and that they mostly slept during the ride and had very little conversation as it was very early in the morning when they left, around 5:00 a.m. Id.

4.    Analysis

Plaintiff again has failed to carry his initial burden of demonstrating that summary judgment is proper and that no reasonable trier of fact could find other than for him. Soremekun, 509 F.3d at 984. Plaintiff admits that there are genuine disputed issues regarding the material facts of his claims against Defendants Mendoza and Osgood. P. MSJ at 16 ("[t]here is clearly a genuine issue of fact."). Additionally, apart from his declaration, none of the other evidence Plaintiff submits supports his position. No one is disputing Plaintiff's placement in the sensitive needs yard and the Informational CDC From 128-B does not state that Plaintiff should have been transported separately from a general population inmate.

Defendants have met their burden of showing that summary judgment is not appropriate. The declarations of Defendants Mendoza and Osgood clearly demonstrate that there are genuine issues of material facts for trial and that the claims cannot be properly decided on summary judgment. Mendoza Decl. and Osgood Decl. Because there are genuine issues of material facts for trial, the Court **RECOMMENDS** that Plaintiff's motion for summary judgment as to Defendants Mendoza and Osgood be **DENIED**.

## CONCLUSION AND RECOMMENDATION

For all of the foregoing reasons, **IT IS HEREBY RECOMMENDED** that the District Judge issue an Order: (1) approving and adopting this Report and Recommendation; (2) granting Defendants' motion for summary judgment as to Defendant Fink; and (3) denying Plaintiff's motion for summary judgment.

**IT IS HEREBY ORDERED** that any written objections to this Report must be filed with the Court and served on all parties **no later than June 28, 2019**. The document should be captioned "Objections to Report and Recommendation."

18cv60-BAS (BLM)

**IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court and served on all parties **no later than <u>July 19, 2019</u>**.  The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order.  <u>See</u> <u>Turner v. Duncan</u>, 158 F.3d 449, 455 (9th Cir. 1998).

**IT IS SO ORDERED.**

Dated:  5/28/2019

Hon. Barbara L. Major
United States Magistrate Judge

18cv60-BAS (BLM)